UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
NEW YORK HOTEL AND MOTEL TRADES
COUNCIL, AFL-CIO,

           Petitioner,

    v.

STANFORD NEW YORK, LLC d/b/a
STANFORD HOTEL or HOTEL STANFORD

           Respondent.
------------------------------X

Case No.

**PETITION TO CONFIRM
LABOR ARBITRATION AWARDS**

Petitioner, New York Hotel and Motel Trades Council, AFL-CIO ("Union") by its attorneys, Pitta LLP, brings this Petition and alleges as follows:

1. The Union brings this action against Stanford New York, LLC d/b/a Stanford Hotel also known as the Hotel Stanford ("Hotel"), to confirm arbitration awards OIC Nos. 2020-57, 2020-63R and 2020-90, issued by the contractual industry arbitrator, directing posting of a bond to secure severance pay and health fund contributions due on behalf of the Hotel's laid off employees (collectively, the "Awards"). The Awards draw their essence from the parties' collective bargaining agreement and its expansive arbitration clause, there are no valid grounds to vacate the Awards, and the Hotel persists in refusing to comply with the Awards. Accordingly, for the reasons set forth below, in the accompanying Declaration of Alyssa Tramposch (the "Tr. Decl." ____), in the accompanying Memorandum of Law and on all papers filed in this action, the Union's Petition to confirm the Awards should be granted.

{00682011-2}

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action to confirm labor arbitration awards pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 and 28 U.S.C. § 1331, federal question. The action is a petition heard as a motion pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

3. Venue properly lies in this District because the Union and the Hotel maintain their principal places of business in this District, and the Awards were rendered and underlying events giving rise to the Awards occurred in this District.

## THE PARTIES

4. The Union is a labor organization within the meaning of federal labor law, Section 2(5) of the LMRA, 29 U.S.C. § 152(5).

5. The Union represents nearly 40,000 workers employed in the hotel, hospitality and gaming industries in New York State and Northern New Jersey with its principal office at 707 Eighth Avenue, New York, N.Y. 10036.

6. Terms and conditions of employment for workers represented by the Union for certain historically smaller boutique hotels and residences within the five boroughs of New York City are negotiated and governed by the Division A Collective Bargaining Agreement ("Div. A Agreement" or "Div. A CBA") between the Union and the Hotel Association of New York City, Inc. ("Hotel Association") and Associated Hotels and Motels of Greater New York. A copy of the Div. A CBA for July 1, 2013 through June 30, 2020, as extended by Memorandum of Agreement through June 30, 2027, is attached to the Tr. Decl. as Exhibit A.

7. Stanford New York, LLC d/b/a The Hotel Stanford a/k/a The Stanford Hotel (the "Hotel") is an "employer" within the meaning of federal labor law, 29 U.S.C. § 152 entered into

the Div. A Agreement with the Union. A copy of the Me Too Agreement by which the Hotel assumed the Div. A Agreement is attached to the Tr. Decl. as Exhibit B.

## STATEMENT OF CLAIM

### The Div. A CBA Relevant Provisions

8. Among other provisions, the Div. A Agreement establishes a living wage (Art. IX and Schedule A), comprehensive health care (Art. XVI), a secure retirement (Art. XVII and XVIII), and severance pay with continued health care coverage in the case of a hotel closing (Art. XXIII and XXIV).

9. Article XXIII Closings, provides in relevant part:

> If an Employer closes its establishment, makes major alterations necessitating the layoff of any employees, or sells, leases or transfers the establishment, it shall notify the Union at least thirty (30) days before such closing, alteration, sale, lease, or transfer. The Employer shall be responsible for all wages and other benefits, including contributions to the Pension and Welfare Funds, provided under this Agreement for no less than thirty (30) days after it notifies the Union.

10. Article XXIV, Severance, provides in relevant part:

> Employees who are permanently laid off for any reason, including automation, construction or closing of the establishment, shall receive severance pay as follows:
> 1. Employees with one (1) to five (5) years of employment shall receive four (4) days of pay for each year of employment; and
> 2. Employees with greater than five (5) years of employment shall receive five (5) days of pay for each year of employment.
>
> In addition, the Employer shall contribute one (1) day of pay for each year of employment to the Health Benefit Fund for employees with one (1) to five (5) years of employment and two (2) days for each year of employment to the Health Benefit Fund for employees with greater than five (5) years of service.

11. To resolve any and all disputes between the parties, the Div. A. CBA contains the broadest possible arbitration language in Article VIII, mandating that any and all disputes

between the parties, including arbitrability, be decided exclusively by the Impartial Chairperson, a permanent industry arbitrator.

12. Div. A Agreement Article VIII provides, in relevant part:

GRIEVANCE PROCEDURE

All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto. Any questions regarding arbitrability, substantive, procedural, or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority, shall be submitted to the Impartial Chairperson in accordance with this Article.

13. For employees in New York City, the Industry Wide Agreement between the Union and Hotel Association ("IWA"), at Article 26(A), echoes the Div. A CBA's broadest possible arbitration language, providing in relevant part:

All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto. Any questions regarding arbitrability, substantive, procedural or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority, shall be submitted to the Impartial Chairperson in accordance with this Article.

14. As a result of the Div. A CBA, IWA and the very broad arbitral authority of the Office of the Impartial Chairperson ("OIC"), all disputes of any nature between the Union, industry employees, and any party bound to the Div. A Agreement or IWA, have been resolved peacefully, without labor strife and with only limited litigation. There have been no industry

strikes since 1985. To date, the industry has weathered and rebounded from every disaster, natural (Superstorm Sandy), human (9/11), or economic (2008 recession).

**Respondent Fails to Pay Prescribed Severance and Health Care**

15. However, in March 2020, as a result of an unprecedented pandemic caused by the novel coronavirus ("COVID"), the then thriving New York region hospitality industry largely closed for indeterminate length. Hotel occupancy plummeted from 77% in February 2020 to about 34% in March 2020. Roughly 85% of workers represented by the Union were laid off, losing the steady income stream to support themselves and families, and facing imminent loss of health care coverage during a pandemic. This crisis continues.

16. The Hotel permanently closed, laying off its Union represented employees on or about April 11, 2020. A copy of the Hotel's letter to the Union informing the Union of the Hotel's "decision to close the business permanently" and acknowledging severance and benefits due to "the employees who will be impacted by this closing" is attached to the Tr. Decl. as Exhibit C.

17. Notwithstanding the express obligations of Div. A CBA Articles XXIII and XXIV, the Hotel failed to post the bond or make the requisite payments to its terminated employees or health benefit fund contributions on their behalf after it closed during the current pandemic.

**The Union Wins OIC Awards No. 2020-57 and 2020-90 (the "Awards")**

18. The Union demanded arbitration of the Hotel failure before the Impartial Chairperson pursuant to Article VIII of the Div. A Agreement. A copy of the Union's grievance demand dated June 20, 2020, is attached to the Tr. Decl. as Exhibit D.

19. The Union and Hotel, by respective counsel and managers, presented their respective positions by evidence and argument to Impartial Chairperson Elliott Shriftman at hearing on June 30, 2020.

20. The Impartial Chairperson rendered his Award 2020-57 dated July 9, 2020 (the "July Award"), copy attached to the Tr. Decl. as Exhibit E, served on the Hotel by email from OIC Administrator Pamela Ozoria that day, copy attached to the Tr. Decl. as Exhibit F. In the July Award, Impartial Chairperson Shriftman addressed the parties' arguments, noted the Union's spreadsheet calculation of amounts due, and applied Div. A. CBA Articles XXIII and XXIV and OIC arbitral precedent to reach his decision. The IC held:

> "Because a bond posting is a remedy available to the Union under the Agreement, unless by the date of the issuance of this award, the aforementioned payments were made to the employees and the Health Benefit Fund consistent with the cited articles of the CBA, the Hotel will be required to post a bond, based on the formula set forth in the CBA and described by the Union in its spreadsheet, with appropriate offsets for payments made between the hearing date and the date of this award. I retain jurisdiction as requested by the Union to allow it, through its request for information, or through information otherwise obtained, to modify the amount of the bond if it learns that the Employer's indebtedness exceeded what the Union believed initially was owed. The Chairperson's retention of jurisdiction includes the right of both sides to return this matter to me for a supplemental award. If no application is made within fourteen days, this award shall be deemed final and binding."

21. By letter brief dated July 23, 2020, Hotel counsel acknowledged receipt and requested reconsideration of the July Award, copy attached to the Tr. Decl. as Exhibit G with exhibits.

22. By letter brief dated July 24, 2020, Union counsel opposed reconsideration and requested that the arbitrator order posting of a bond in amounts stated, copy attached to the Tr. Decl. as Exhibit H.

{00682011-2}

6

23. The Impartial Chairman, having reviewed the letter briefs of the Hotel and Union, ruled on the parties' respective positions by reconsideration award No. 2020-63R on July 29, 2020, copy attached as Exhibit I (the "Reconsideration Award"), reaffirming his original order for a bond posting.  In doing so, the Impartial Chairperson cited both prior arbitral precedent from the parties' letters and the broad arbitration clause of the Div. A Agreement.  Finally, Impartial Chairman Shriftman noted the parties' disagreement concerning the exact amounts due, encouraged them to attempt resolution, and directed a hearing to determine those amounts if they continued to disagree.

24. The Office of the Impartial Chairperson, by Administrator Pamela Ozoria, served the Reconsideration Award on all parties, the Hotel Association and their counsel, including Hotel counsel "Jimmy Song <jimmy@songlegal.com>" by email dated July 29, 2020, copy attached as Exhibit J.

25. Impartial Chairperson Shriftman held a hearing on the parties' competing unresolved positions on September 22, 2020.  The Hotel appeared by its Assistant General Manager and counsel.  The Union appeared by its agents and counsel.  Each party presented such evidence and argument as it desired in addition to their submissions at hearing on June 30 and their respective July letter briefs.

26. Impartial Chairman Shriftman issued his supplemental Award No. 2020-90 on November 9, 2020, copy attached as Exhibit K (the "November Award").  The Chairman largely repeated his July Award on p. 1, adding the amounts due based on the parties' respective evidence on p. 2, totaling $1,127,525.91.  He concluded:  "I find that the foregoing are the amounts due and for which the Employer must post a bond in the same amount subject to reduction by payments made consistent with this award."

**The Hotel Fails to Comply With the Awards**

27. The November Award was served upon counsel to the Hotel and counsel to the Union via email by the OIC Administrator Pam Ozoria on November 9, 2020, copy attached to the Tr. Decl. as Ex. L.

28. To date, though duly demanded, the Hotel has failed and refused, and continues to refuse, to comply with the Awards.

29. The Awards have not been vacated by order of any court of competent jurisdiction and are still in full force and effect.

30. The Awards draw their essence from the Div. A CBA as fully set forth by the arbitrator in the Awards.

31. There is no basis in law, fact, or equity to vacate the Awards.

32. The time for the Hotel to move to vacate the Awards has passed.

33. No prior application for the relief requested herein has been made to this or any other court or judge.

## REQUEST FOR RELIEF

**WHEREFORE**, for the reasons and upon the authority set forth herein, in the Tramposch Declaration, the Union's accompanying Memorandum of Law, and all papers filed in this action, the Union respectfully requests an Order be made and entered:

a) Granting the Petition and the Union's motion to confirm the Awards and ordering compliance therewith;

b) Granting the Union pre-judgment interest since the date of the November Award, November 9, 2020;

c) Granting the Union, post-judgment interest;

d)   Granting the Union attorney's fees, costs, disbursements; and

e)   Granting such other equitable and further relief this Court deems fair and appropriate.

Dated: New York, New York
       March 9, 2021

                                              PITTA LLP
                                              *Attorneys for Petitioner*

By: _____/s_____
Barry N. Saltzman
(bsaltzman@pittalaw.com)
Andrew D. Midgen
(amidgen@pittalaw.com)
120 Broadway, 28th Floor
New York, NY  10271
Telephone:  212-652-3890
Facsimile:   212-652-3891

{00682011-2}

9