UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEW YORK HOTEL AND MOTEL TRADES
COUNCIL, AFL-CIO,

                                    Petitioner,

                    -v-

STANFORD NEW YORK, d/b/a STANFORD
HOTEL or HOTEL STANFORD,

                                    Respondent.

21 Civ. 2012 (PAE)

<u>OPINION &
ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

Petitioner—the New York Hotel and Motel Trades Council, AFL-CIO (the "Union")—

seeks confirmation of three arbitral awards issued against respondent Stanford New York

("Stanford"). *See* Dkt. 1 ("Pet."); Dkt. 4 ("Tramposch Decl."), Exs. E ("First Award"),

I ("Reconsideration Award"), K ("Final Award," and together with the First Award and the

Reconsideration Award, the "Awards"). Stanford is a hotel which employed many of the

Union's members and was subject to a collective bargaining agreement with the Union. *See* Pet.

¶¶ 1, 6; Tramposch Decl., Ex. A ("CBA"). When it permanently closed amid an industry

downturn brought on by the COVID-19 pandemic, it failed to honor certain obligations to those

Union employees under the CBA, leading the Union to commence arbitral proceedings against it.

The Union now sues under section 301 of the Labor Management Relations Act ("LMRA"),

29 U.S.C. § 185, seeking an order confirming the Awards, ordering compliance with them, and

granting the Union pre-judgment interest, post-judgment interest, and attorneys' fees and costs.

For the following reasons, the Court grants the Petition in principal part.

# I. Background[1]

## A. The Parties and Their Agreements

The Union is a labor organization as defined by LMRA section 2(5), 29 U.S.C. § 152(5). Pet. ¶ 4. It represents nearly 40,000 workers employed in the hotel, hospitality, and gaming industries in New York and Northern New Jersey. *Id.* ¶ 5. Its principal place of business is 707 8th Avenue, New York, NY 10036. *Id.* Stanford is an "employer" under 29 U.S.C. § 152(2). *Id.* ¶ 7.

The CBA governs the terms of employment for workers whom the Union represents. *Id.* ¶ 6; *see* CBA. In July 2013, Stanford adopted and thus agreed to the CBA's terms. Pet. ¶ 6; *see* Tramposch Decl., Ex. B ("Me Too Agreement"). The CBA requires, as relevant here, that employers like Stanford provide Union members with comprehensive health care; a secure retirement; and, if a hotel closes, severance pay with continued health-care coverage upon such closing. Pet. ¶ 8. As to closings specifically, it requires that hotels notify the Union 30 days before any closing, provide all wages and benefits for at least 30 days after such notification, and pay all permanently laid-off employees severance based on their length of employment. *Id.* ¶¶ 9–10. The CBA also contains a broad arbitration provision, requiring that all disputes be decided exclusively by the Impartial Chairperson ("IC"), a permanent industry arbitrator. *Id.* ¶¶ 11–12. For New York City employees, a separate Industry Wide Agreement ("IWA") between the Union and the Hotel Association similarly requires arbitration before the IC. *Id.* ¶ 13.

---

[1] The following undisputed facts derive from the Petition, as well as the declaration of Alyssa Tramposch. The Court has also considered the facts presented in Stanford's filings, including an unsworn opposition to the petition improperly designated on the docket as a "declaration" by Jimmy Song, Esq., Dkt. 10 ("Song Opp'n"), and the declaration of Yong Je Park, Dkt. 12 ("Park Decl.").

## B. The Arbitral Award

In March 2020, amid the COVID-19 pandemic, hotel occupancy in New York City plummeted. *Id.* ¶ 15. As a result, the following month, Stanford permanently closed and laid off its Union workforce. *Id.* ¶ 16. In doing so, however, it breached its closing obligations under the CBA, including by failing to make requisite closing and severance payments to its laid-off employees and failing to contribute to their health-benefit fund. *Id.* ¶ 17. The Union soon commenced arbitral proceedings against Stanford by filing a grievance demand under the CBA. *Id.* ¶ 18.

On June 30, 2020, the parties appeared at a hearing and presented their positions to IC Elliott Shriftman. *Id.* ¶ 19. On July 9, 2020, the IC ruled for the Union, requiring Stanford to post a bond in the amount requested by the Union—$1,646,380.04—with "appropriate offsets" reflecting amounts Stanford had paid since the Union's most recent submission. *Id.* ¶ 20; First Award at 2; *see* Tramposch Decl., Ex. G at 3. The First Award also stated that IC Shriftman would retain jurisdiction over the proceeding for enforcement and supplementation of the Award, as needed. *See* First Award at 2.

On July 23, 2020, Stanford requested reconsideration of the First Award, arguing that the IC had erred in concluding that the CBA authorized a bond posting and, in any event, seeking modification of the bond amount. Pet. ¶ 21; Tramposch Decl., Ex. G. On July 24, 2020, the Union opposed that request. Pet. ¶ 22. On July 29, 2020, the IC reaffirmed the First Award. *Id.* ¶ 23; *see* Reconsideration Award. In that decision, however, he also scheduled a hearing to determine the precise amount that Stanford owed. *See* Reconsideration Award at 2. On September 22, 2020, the IC held that hearing, at which both the Union and Stanford appeared and presented evidence. Pet. ¶ 25.

On November 9, 2020, the IC issued a supplemental award. *Id.* ¶ 26; *see* Final Award. Based on the evidence at the September hearing, the IC again ruled for the Union, and found the total amount due to be $1,127,525.54. Final Award at 2.[2] As a result, the IC ordered Stanford to post a bond in that amount. *Id.*; Pet. ¶ 26. According to the Petition, despite being served with all three Awards and challenging only the First Award, Stanford has refused to pay the amounts due. Pet. ¶¶ 26–29.

### C. This Action

On March 9, 2021, the Union commenced this action by filing the Petition, a memorandum of law in support, Dkt. 5 ("Pet. Mem."), and the Tramposch Declaration. On March 23, 2021, Stanford filed an opposition. Dkt. 11 ("Opp'n"). In its opposition, Stanford does not contest the validity of the Awards or seek to vacate them. Rather, it argues only that the order confirming the Awards should reduce the final amount awarded by $234,901.15, which Stanford claims to have paid the Union since the IC entered the Final Award. *See id.* at 1–2 ("Respondent is not requesting the Court to vacate the Award, but rather requesting the entry of the correct amount due under the Award."); Song Opp'n at 2; *id.*, Ex. A. Stanford contends that it has tried in good faith to pay the amounts it owes to its former employees, but that given its permanent closure and financial distress, it has simply been unable to do so. Song Opp'n at 2; Park Decl. ¶¶ 7–15 (describing five payments, between November 2020 and March 2021, of $46,980.23 each). On March 30, 2021, the Union replied. Dkt. 13 ("Reply"). It argues that Stanford's requested modification is unnecessary, given that the Final Award is "subject to reduction by payments made consistent with this award." *Id.* at 2 (quoting Final Award at 2). It also argues that, should the parties dispute the amounts that are outstanding, such disputes are subject to

---

[2] The Petition erroneously reports this amount as $1,127,525.91, but the Final Award provides for a bond of $1,127,525.54. *Compare* Pet. ¶ 26, *with* Final Award at 2.

initial review by the IC, not the Court.  *Id.*  Still, the Union concedes that the pre- and post-judgment interest it seeks "can be computed based on the undisputed minimum amount owed to the Hotel's laid off employees – $892,624.76."  *Id.* at 3.

## II.    Discussion

### A.    Applicable Legal Standards

Arbitral awards are not self-enforcing.  Rather, they "must be given force and effect by being converted to judicial orders by courts."  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006).

The Federal Arbitration Act provides a "'streamlined' process for a party seeking 'a judicial decree confirming an award.'"  *Salzman v. KCD Fin., Inc.*, No. 11 Civ. 5865 (DLC), 2011 WL 6778499, at *2 (S.D.N.Y. Dec. 21, 2011) (quoting *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)).  "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected."  *D.H. Blair*, 462 F.3d at 110 (citation omitted).  In this Circuit, "[t]he showing required to avoid summary confirmation of an arbitration award is high . . . ."  *Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12 (2d Cir. 1997); *see Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an [arbitrator's] decision great deference.").  That deference is especially appropriate for arbitral awards rendered in the labor context:  "[A] federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law."  *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016); *id.* at 536 (noting the LMRA's "particular emphasis on private arbitration of grievances" as means of "promoting industrial stabilization" (citation omitted)).

Review of an arbitral award by a district court thus "is 'severely limited' so as not unduly to frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation." *Salzman*, 2011 WL 6778499, at *2 (quoting *Willemijn*, 103 F.3d at 12). Indeed, "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is 'a barely colorable justification for the outcome reached.'" *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)).

Courts evaluate a motion to confirm an arbitral award against a party that has failed to oppose the motion under the legal standards applicable to a motion for summary judgment. *See D.H. Blair*, 462 F.3d at 109–10. To prevail on such a motion, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the court must view all facts "in the light most favorable" to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (citations omitted). In determining whether there are genuine issues of material fact, the court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001). In reviewing an unopposed motion for confirmation of an arbitration award,

> a court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*.

*D.H. Blair*, 462 F.3d at 110 (emphasis in original) (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244).

Where "[t]here is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law . . . a court must grant an order to confirm an arbitration award upon the timely application of a party." *Herrenknecht Corp. v. Best Rd. Boring*, No. 06 Civ. 5106 (JFK), 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007).

### B. Confirmation of the Arbitral Award

Based on the Awards, and on the minimal review appropriate, the Court finds that summary judgment is warranted, as the Union has shown that there is no material issue of fact in dispute. The arbitrator acted within the broad scope of the authority granted to him by the parties through the CBA. In the First Award, after a hearing, the IC considered arguments advanced by both the Union and Stanford, and, based on the terms of the CBA, ruled that Stanford had to pay its laid-off employees accrued benefits, closure pay, and severance pay, but had failed to do so. *See* First Award at 1–2. Upon reconsideration, he reaffirmed the bond remedy he had ordered, relying on the broad discretion that the CBA granted arbitrators "to fashion remedies that are responsive to the dispute before them." Reconsideration Award at 1. And after a second hearing, he found (based largely on Stanford's own calculations) that Stanford owed its employees $1,127,525.54. *See* Final Award at 2. As a result, he ordered Stanford to post a bond in that amount. *See id.* From this, the Court holds that there is at least a "barely colorable justification for the outcome reached," and, by all indications, a more than colorable one. *Landy Michaels Realty Corp.*, 954 F.2d at 797 (citation omitted).

Thus, the Court confirms the Awards in favor of the Union, in full. The Court rejects Stanford's invitation to reduce the bond ordered in the Final Award to reflect a running tally of payments it has made. As the Union notes, such modification is unnecessary given the Final Award's specification that the bond amount is "subject to reduction by payments made consistent with this award." Final Award at 2. Subject to the expectation that the Union will respect that aspect of the Final Award, the Court thus does not perceive any need to alter the relief granted in it. Stanford is liable for the full bond amount, reduced by any payments it has already made consistent with the Final Award. If, in the future, the parties have any disputes over the amounts that remain outstanding—and such does not appear to be the case at this point—they are at liberty to litigate those disputes in an appropriate forum.

### C. Pre-Judgment Interest

The Union seeks pre-judgment interest. *See* Pet. at 8. "New York law provides for prejudgment interest running from the date of an arbitration award until the entry of final judgment." *Finger Lakes Bottling Co. v. Coors Brewing Co.*, 748 F. Supp. 2d 286, 292 (S.D.N.Y. 2010); *see also In re Arbitration Between Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 227 (S.D.N.Y. 2005) ("[A]n arbitration award confirmed under the FAA bears interest from the date of the award until judgment confirming it." (citation omitted)). As the Union requests, the Court therefore grants it pre-judgment interest calculated from the date of the Final Award until the entry of judgment. *See* Pet. at 8. In accord with "the common practice among the courts of this Circuit," the Court "set[s] the interest rate at 9%." *N.Y. City Dist. Council of Carpenters Pension Fund v. E. Millenium Const., Inc.*, No. 03 Civ. 5122 (DAB), 2003 WL 22773355, at *3 (S.D.N.Y. Nov. 21, 2003); *see N.Y. City Dist. Council of Carpenters v. Metro Furniture Servs. LLC*, No. 11 Civ. 7074 (HB), 2012 WL 4492384, at *3 (S.D.N.Y. Sept. 28, 2012) ("[T]he common practice among courts within the Second Circuit is to

grant interest at a rate of 9%, the rate of prejudgment interest under New York State law."

(citation omitted)). However, given Stanford's uncontested representation that it has paid much

of the bond amount ordered in the Final Award, and the Union's concession that "both the

requisite pre and post judgment interest can be computed based on the undisputed minimum

amount owed to the Hotel's laid off employees – $892,624.76," the Court grants pre-judgment

interest only on that undisputed amount.

### D.  Post-Judgment Interest

The Union also seeks post-judgment interest. *See* Pet. at 8. Such interest "shall be

allowed on any money judgment in a civil case recovered in a district court . . . at a rate equal to

the weekly average 1-year constant maturity Treasury yield, as published by the Board of

Governors of the Federal Reserve System, for the calendar week preceding" the date of the

judgment. 28 U.S.C. § 1961(a). Awards of post-judgment interest under § 1961 are mandatory.

*See Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013) (collecting cases). An

order confirming an arbitral award is to be "docketed as if it was rendered in an action," and a

judgment in an arbitration must "have the same force and effect, in all respects, as, and be

subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as

if it had been rendered in an action in the court in which it is entered." 9 U.S.C. § 13. Thus, § 1961

applies to actions to confirm arbitral awards. *See, e.g.*, *Westinghouse Credit Corp. v. D'Urso*,

371 F.3d 96, 100–01 (2d Cir. 2004) (awarding post-judgment interest in an arbitration case).

The Court therefore also awards interest to accrue from the date judgment is entered until

Stanford satisfies its payment obligations, but again, for the reasons discussed, only on the

$892,624.76 that Stanford has undisputedly not yet paid.

### E. Attorneys' Fees and Costs

Last, the Petition seeks attorneys' fees and costs. Pet. at 9. However, the Union's submissions in support of the petition do not identify any statutory or contractual authority for such an award. *See* Pet. Mem. (failing to mention fees or costs). And while, "pursuant to its inherent equitable powers, a court may award attorneys' fees when the opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons"—including "when a challenger refused to abide by an arbitrator's award without justification"—those circumstances are not present here. *Celsus Shipholding Corp. v. Manunggal*, No. 06 Civ. 13598 (DLC), 2008 WL 474148, at *2 (S.D.N.Y. Feb. 21, 2008) (cleaned up) (quoting *Int'l Chem. Workers Union (AFL-CIO), Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)). As the IC noted in both the First and Final Awards, he had "no reason to believe that [Stanford] was being dishonest or disingenuous when it stated it was making a good faith effort to pay its contractual obligations." First Award at 2; Final Award at 2. Rather, it has simply been unable to do so in full, while apparently making some payments toward its obligations. *See* Park Decl. ¶¶ 3, 8–15. Because the Union has not provided evidence on which the Court could find bad faith, the Court does not award fees and costs associated with bringing the Petition.

## CONCLUSION

For the reasons above, the Court confirms the Awards in favor of the Union in full. Stanford must post a bond in the amount of $1,127,525.54, subject to reduction by payments made consistent with the Final Award. The Court also awards pre-judgment interest at the rate of 9% and post-judgment interest under 28 U.S.C. § 1961(a), but only on the undisputed outstanding amount of $892,624.76. Pre-judgment interest shall run from the date of the Final Award: November 9, 2020.

The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: May 10, 2021
New York, New York